UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM J. HUNTER,

                         Plaintiff,

v.                                            **DECISION AND ORDER**
                                                10-CV-941S

ALLVAC,

                         Defendant.

## I. INTRODUCTION

Plaintiff William J. Hunter seeks damages for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* by his employer, Defendant Allvac. Plaintiff alleges that Defendant impermissibly discriminated against him on the basis of race, he was subjected to sexual harassment and a hostile work environment, and that Defendant improperly retaliated against him for filing grievances. Pending before this Court is Defendant's Motion for Summary Judgment.[1] For the reasons discussed below, this Court finds the matter fully briefed and oral argument unnecessary, and concludes that Defendant's motion should be granted.

## II. BACKGROUND

Plaintiff, an African-American male, has been employed by Defendant since 1986, and has worked as a Furnace Operator Helper Job Class 2 in the company's Remelt

---

[1] In support of its motion (Docket No. 15), Defendant submitted the Affidavit of Jeff Gmerek; the Affidavit of Tom Wager, the Attorney Declaration of Robert C. Weissflach, Esq., Def.'s Statement of Undisputed Facts, a supporting Memorandum of Law, and an Appendix of Exhibits A-P (Docket Nos. 15 and 16). Plaintiff opposed the motion with Pl's Statement of Undisputed Facts, the Affidavit of Plaintiff William J. Hunter, the Attorney Declaration of Charles L. Miller, Esq., with Exhibits 1-8 (Docket No. 20). Defendant filed a reply Memorandum of Law (Docket No. 21).

Department since 2005. (Decl. of Jeff Gmerek ¶¶ 19-21, Docket No. 15-1; Dep. of Plaintiff William J. Hunter at 20-24, Appendix ("App.") Ex. G, Docket No. 16-7.)  Prior to 2006, Defendant operated  seven furnaces in this department: six Electro Slag Remelt ("ESR") furnaces and one Vacuum Arc Remelt ("VAR") furnace.  (Gmerek Decl. ¶ 12.)  Three additional VAR furnaces were added after 2006. (Gmerek Decl. ¶ 12; Pl.'s Dep. at 58-59.) There is a Group Leader assigned to each shift in the department, which is a promotion given based on availability to the most senior employee determined to be capable of directing other operators and helpers.  (Gmerek Decl. ¶ 16.)

In order to receive a promotion to Group Leader, and the accompanying raise in pay, an employee must be trained in the operation of all furnaces, and be able to properly operate multiple furnaces simultaneously. (Gmerek Decl. ¶ 16; Pl.'s Dep. at 46.)  Plaintiff alleges that the training he received on Furnace No. 6, the VAR furnace, was deliberately inadequate in comparison to the training received by employees who were either Caucasian or perceived to be Caucasian. (Compl. ¶ 9-10.)  Plaintiff asserts that, as a result of the perfunctory training, he was improperly precluded from receiving a promotion to Group Leader until November 2009, after one Caucasian employee with less seniority had already been promoted. (Compl. ¶¶10-12, 26.) Plaintiff's union filed grievances in 2007 and 2008 alleging failure to promote in violation of the governing collective bargaining agreement; both grievances, however, were later withdrawn by the union after discussions with management.  (Pl.'s Aff. ¶¶ 13, 15, 18, Docket No. 20-2; Gmerek Decl. ¶ 32; App. Ex. L.)

Plaintiff further asserts that in August and September 2007 he received a harsher punishment for damaging equipment than similarly situated Caucasian coworkers. (Pl.'s

2

Aff. ¶¶ 16; see Gmerek Decl. ¶¶ 37-39.) Further, Plaintiff asserts that he "was singled out with regard to drug testing" on June 20, 2008. (Pl.'s Aff. ¶ 19.) Plaintiff does not dispute that he tested 'non-negative' twice during an annual physical examination before being sent offsite for a urinalysis. (Def.'s St. of Undisputed Facts ¶¶ 51-52; Pl.'s Aff. ¶¶ 19, 21.) Plaintiff argues, however, that two Caucasian employees who had not filed grievances also tested 'non-negative,' but that the testing device was recalibrated for those employees, who then tested negative without off site referral. (Pl.'s Aff. ¶ 22.) Plaintiff was suspended for approximately a week without pay, but received back pay for that time when the test results came back negative. (Pl.'s Dep. at 100-101.) Finally, Plaintiff asserts that he has been subjected to ongoing harassment based on his perceived homosexuality. (Compl. ¶¶ 19-22.)

In August 2008, Plaintiff filed a charge of discrimination with the New York State Department of Human Rights ("NYSDHR") alleging race discrimination and ongoing sexual harassment. (App. Ex. A (NYSDHR Charge), Docket No. 16-1.) This charge was cross-filed at that time with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 6 (b).) The NYSDHR determined that there was no probable cause to believe that Defendant engaged in discriminatory conduct, (App. Ex. C (Determination), Docket No. 16-3.), and on August 18, 2010, the EEOC adopted the findings of the NYSDHR and issued a right-to-sue letter to Plaintiff. (App. Ex. D (Notice), Docket No. 16-4.) Plaintiff commenced the instant action in this Court in November 2010.

### III. DISCUSSION

Summary judgment is appropriate, even in a discrimination case, where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), (internal quotation marks omitted), *cert denied* 540 U.S. 811 (2003); see Fed.R.Civ.P. 56 (a), (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock 224 F.3d at 41 (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  In reaching a determination, the record is not to be considered "in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must 'review all of the evidence in the record.' " Kaytor, 609 F.3d at 545 (*quoting* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Further, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir.2003).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (a)(1). Here, the Plaintiff's complaint alleges that Defendant violated Title VII by (1) discriminating against Plaintiff based on his race; (2) failing to take any corrective action with respect to the sexual harassment and hostile

work environment to which Plaintiff was subjected; and (3) retaliating against Plaintiff for filing grievances regarding improper training and promotional practices.  In determining a motion for summary judgment on any of these claims, courts apply the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Kaytor, 609 F.3d at 552; Dawson v. Bumble & Bumble, 398 F.3d 211, 216-217 (2d Cir.2005); Terry v. Ashcroft, 336 F.3d 128, 137-138 (2d Cir. 2003).  Under this framework, a plaintiff must first establish a *prima facie* Title VII violation by showing that: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Terry, 336 F.3d at 138. This initial burden is de minimus, and once a plaintiff meets it, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for alleged discriminatory action.  See Ruiz v. Cnty. of Rockland, 609 F3d 486, 492 (2d Cir. 2010); see also Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000)(describing a plaintiff's initial burden as minimal), *cert denied* 530 U.S. 1261 (2000).

"Upon the defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42.  A plaintiff must then come forward with sufficient evidence that the articulated reason is a mere pretext for actual discrimination, as well as sufficient evidence upon which a trier of fact may reasonably conclude that plaintiff's assertion of intentional discrimination is true. Weinstock, 224 F.3d at 42, citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).  "In short, the question becomes whether the

evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock, 224 F.3d at 42.

**A.     Racial Discrimination**

Plaintiff alleges in his complaint that Defendant subjected him to two adverse employment actions as a result of his race: Defendant failed to train him properly on Furnace No. 6 from 1998 to 2007; and Defendant promoted a Caucasian employee with less seniority than Plaintiff in 2008, even though Plaintiff was fully trained and eligible for promotion. (Compl. ¶¶ 25-26.)  See La Grande v. DeCrescente Dist. Co., 370 Fed. Appx. 206, 211 (2d Cir. 2010)(training is a benefit of employment protected by Title VII).

Initially, Defendant argues that Plaintiff's claims must be dismissed insofar as they are based on conduct that occurred prior to October 19, 2007.  (Def.'s Mem. of Law at 4, Docket No. 15-5.)  Plaintiff neither acknowledges nor opposes this argument in his response.  This Court agrees that Plaintiff's racial discrimination claim must be dismissed as time barred.

Under Title VII's statutory scheme, a claimant must first file a timely charge with the EEOC and obtain a right to sue letter as a condition precedent to commencing a Title VII action in district court. McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 213-14 (2d Cir. 2006); Moche v. City University of N.Y., 781 F.Supp. 160, 166 (E.D.N.Y.1992), *aff'd* 999 F.2d 538 (2d Cir.1993).  "[A] right-to-sue letter enables a private suit only if it is issued in connection with an administrative charge that is timely filed." McPherson, 457 F.3d at 214. Where, as here, a claimant initially commences proceedings in New York, a state with a fair employment agency, the EEOC "charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice

occurred." 42 U.S.C. § 2000e-5 (e)(1); McPherson, 457 F.3d at 213-14; Pikulin v. City Univ. of N.Y., 176 F.3d 598, 599 (2d Cir. 1999).

Here, Plaintiff filed a charge of discrimination with the NYSDHR on August 15, 2008, which was subsequently cross-filed by that agency with the EEOC.  (Compl. ¶ 6; App. Ex. A.)  Thus, as Defendant argues, this charge is only timely with respect to discriminatory adverse employment actions occurring *after* October 19, 2007.  Plaintiff alleges in his complaint that Defendant failed to properly train him "on a specific piece of equipment, Furnace # 6, from 1998 to 2007." (Compl. ¶ 25).  In his deposition testimony, Plaintiff specified that he was denied training on Furnace No. 6, the VAR furnace, prior to the upgrade in 2006. (Pl.'s Dep. at 52, 58-60.) Further, when asked when he received "training on how to operate each of the *seven* furnaces that were in the remelt department," Plaintiff answered, "2006, I believe." (Id. at 51-52 (emphasis added).)  Although Plaintiff states in his affidavit opposing the present summary judgment motion that he was not properly trained for the position of senior operating technician, or Group Leader, from 2001 until 2009, (Pl.'s Aff. ¶¶ 9-11), this statement contradicts his own prior deposition testimony and will be disregarded. See Estate of Hamilton v. City of New York, 627 F.3d 50, 54 (2d Cir. 2010); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). This claim is therefore time barred.

Defendant is also entitled to summary judgment with respect to the claim that Plaintiff was denied a promotion in 2008 on the basis of race.  To establish a prima facie case of discrimination based on the failure to promote, a plaintiff must show that "[]he applied for an available position for which []he was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Brown v. Coach

7

Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998)(internal quotation marks and citation omitted). Here, although Plaintiff's arguments allege generally that Caucasian employees of lower seniority were promoted over him, the record only contains evidence of one specific occasion when a coworker with less seniority was promoted over him to an available position. See Petrosino v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004)(there must be a specific application at issue); Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, -- F. Supp. 2d --, 2012 WL 2333303, *15-16 (S.D.N.Y. June 19, 2012)(plaintiff's desire for promotion to a certain position insufficient to state a claim where that position did not become available until after plaintiff's retirement). In August 2006,[2] Kevin Harrison was promoted to an available Group Leader position despite having less seniority than Plaintiff. (Gmerek Decl. ¶¶ 26-27.) Initially, Plaintiff himself consistently describes Harrison as African-American. (Pl.'s Dep. at 39-41, 93.) Contrary to the conclusory assertions in Plaintiff's complaint and memorandum of law, there is no evidence in the record from which to infer that anyone perceived Harrison as Caucasian. Plaintiff has therefore failed to show that the promotion of Harrison over Plaintiff "occurred under circumstances giving rise to an inference of discriminatory intent." Terry, 336 F.3d at 138. Further, because this promotion took place in 2006, as discussed above, this claim is also time barred and must be dismissed.

Finally, although he does not reference this allegation in his first cause of action, Plaintiff also asserts that in September 2007 he was punished for damaging equipment

---

[2] Although Plaintiff alleges in his unverified complaint that this promotion took place in August 2008, (Compl. ¶ 12), he admits in his response to Defendant's Undisputed Statement of Facts that this occurred in August 2006. (Pl's Local Rule 56.1 Statement ¶ 41, Docket No. 20-1.)

more severely than Caucasian employees who caused similar damage. (Compl. ¶ 23; Pl.'s Aff. ¶ 16.) Plaintiff offers no specifics regarding what damage was caused by coworkers, and, in any event, the claim is also time barred.  The first cause of action is therefore dismissed in its entirety.

**B.      Sexual Harassment and Hostile Work Environment**

In his second cause of action, Plaintiff alleges that he "was subjected to gross, severe and pervasive sexual insult, intimidation and ridicule" that created a hostile work environment based upon perceived sexual orientation.  (Compl. ¶¶ 7, 32.) Defendant argues that this claim must be dismissed because discrimination claims based upon sexual orientation are not cognizable under Title VII. (Def.'s Mem. of Law at 5.) Defendant further argues that Plaintiff's allegations of sophomoric conduct are insufficient to establish a hostile work environment and, in any event, this conduct cannot be imputed to Defendant where management conducted prompt investigations and imposed remedial action. (Id. at 5-8.)

This Court agrees with Defendant that this second cause of action must be dismissed. A plaintiff who brings a Title VII claim of a hostile work environment based on sexual harassment must establish that the conduct complained of occurred "'because of the plaintiff's sex.'" McGullan v. Cedar Graphics, Inc., 609 F.3d 70, 79 n 6 (2d Cir. 2010), (*quoting* Patane v. Clark, 508 F3d 106, 113 (2d Cir. 2007)); see Liebovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 189 (2d Cir. 2001).  An inference of discrimination based on an individual's sex may be raised by evidence from which a trier of fact could conclude that the harassing conduct was motivated by sexual desire; the harassing conduct was motivated by general hostility to the presence of a person of a plaintiff's gender in the

workplace; or by "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).  There is no allegation here that Plaintiff was treated unfavorably specifically because he was a man.  Nor is there any evidence from which to infer that any of the coworkers who allegedly harassed Plaintiff were homosexual, which would give rise to an inference of discrimination based on sexual desire. Oncale, 523 U.S. at 80.

Further, discrimination based upon sexual orientation alone is not actionable under Title VII. Dawson, 398 F.3d at 217-218.  A plaintiff can, however, state a claim for discrimination based upon his or her failure to conform to socially accepted gender roles. Id. (citing Price Waterhouse v. Hopkings, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).  Here, however, Plaintiff neither alleges nor offers any evidence from which it can be inferred that he somehow failed to conform to socially accepted gender roles. Thus, Plaintiff's cause of action based on 'perceived sexual orientation' must fail.

Defendant also correctly asserts that the alleged harassment is not sufficiently pervasive to constitute a hostile work environment. A plaintiff opposing a motion for summary judgment on a hostile work environment claim must elicit evidence "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003), *cert denied* 540 U.S. 1016 (2003)(internal quotation marks omitted). Notably, the mere fact that the "words used have sexual content or connotations" does not automatically constitute discrimination based

upon sex. Oncale, 523 U.S. at 80.

> Although explicit sexual content or vulgarity may often take a factfinder a long way toward concluding that harassing comments were in fact based on gender, this need not necessarily be the case. Most unfortunately, expressions such as 'fuck me,' 'kiss my ass,' and 'suck my dick,' are commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men speaking to other men), their use has no connection whatsoever with the sexual acts to which they make reference-even when they are accompanied . . . with a crotch-grabbing gesture. Ordinarily, they are simply expressions of animosity or juvenile provocation, and there is no basis in this record to conclude that [Plaintiff's coworkers'] usage was any different.

Johnson v. Hondo, Inc., 125 F.3d 408, 412 (7th Cir. 1997)(internal citation omitted); see Oncale, 523 U.S. at 81 (determination of sexual harassment "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target")).

In support of this cause of action, Plaintiff cites to incidents where coworkers made comments to Plaintiff such as "[y]ou really like hot dogs, right," "suck my dick," and "[h]omo;" blocked his path in the locker room while naked, and on one occasion left a crude aluminum sculpture of genitalia in a furnace on which he was working. (Compl. ¶¶ 19-22; Pl.'s Dep at 105-111.) There is no indication in this record that any of the conduct was more than "simple expressions of animosity or juvenile provocation." Johnson, 125 F.3d at 412. Indeed, Plaintiff admitted[3] during his deposition that he "may have taken [certain comments] the wrong way," the comments may have been made "jokingly," and that "some guys act a fool" with juvenile behavior. (Pl.'s Dep. at 108-109, 115-116.); see Phillips v. Merchants Ins. Corp., 3 F. Supp. 2d 204, 208 (N.D.N.Y. 1998)(immature, nasty, or annoying behavior is not, without more, actionable), *appeal dismissed* 173 F.3d 845 (2d

---

[3]Notably, Plaintiff did not address any of the alleged sexual harassment incidents in his affidavit opposing the summary judgment motion.

Cir. 1999). He further testified that, when he looked back on the incident where someone left a tin foil penis on a furnace, "it was funny." (Pl's Dep. at 119.) Finally, Plaintiff concedes that management responded to his complaints about these incidents by investigating, organizing a "make up meeting," and/or holding refresher courses in the company's harassment policies. (Pl.'s Dep. at 109-11, 121-123.) As such, Plaintiff cannot impute this conduct to Defendant based upon a failure to act. See Duch v. Jakubek, 588 F.3d 757, 763 (2d Cir. 2009).

**C.   Retaliation**

Plaintiff's third cause of action is for retaliation in violation of Title VII. In order to establish such a claim, a plaintiff must show that (1) he was engaged in an activity protected under Title VII; (2) his employer was aware of this protected activity; (3) an adverse employment action was taken against the plaintiff; and (4) " 'that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.' " Kessler v. Westchester Cnty. Dep't of Social Servs., 461 F.3d 199, 205-06 (2d Cir. 2006)(*quoting* Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001); Foster v. Humane Society of Rochester and Monroe Cnty., Inc., 724 F.Supp.2d 382, 394-95 (W.D.N.Y. 2010). Defendant argues that this claim must be dismissed because Plaintiff failed to exhaust administrative remedies with respect to this claim, and, in any event, failed to establish a *prima facie* case of retaliation in opposition to Defendant's motion for summary judgment. (Def.'s Mem. of Law at 20-24.)

Even if this Court concludes that the reference in the administrative complaint to Plaintiff "go[ing] to managment and [his] union, but this harassment continues" in

connection with his sex discrimination claim is sufficient to alert a reviewing agency to a claim of retaliation, (App. Ex. A); see Fitzgerald v. Henderson, 251 F.3d 345, 366 (2d Cir. 2001)(retaliation claim properly dismissed where "[t]here was no semblance of that claim" in the administrative complaint), *cert denied* 536 U.S. 922 (2002), Plaintiff's third cause of action must nonetheless be dismissed. Plaintiff alleges that Defendant engaged in two retaliatory acts: first, Defendant failed to train or promote Plaintiff as a result of a grievance filed in 2006, and second, Defendant forced Plaintiff to undergo a faulty drug test in June 2008 as a result of a grievance he filed in April 2008. (Compl. ¶ 37-39.)  As discussed above, Plaintiff's claims of adverse employment actions based on the failure to train or the failure to promote must be dismissed as time barred.

Further, Plaintiff concedes, as he must, that "[t]he union grievances filed by the Plaintiff in 2006 and 2008 do not specify a complaint [of] discrimination based on race." (Pl.'s Mem. of Law in Opp'n at 9, Docket No. 20.; see App. Ex. L.) Although he references his attempts to raise the issue of race discrimination with his *union*, Plaintiff admits that "[p]rior to filing his Complaint with the [NY]SDHR, [Plaintiff] never complained to [*Defendant*] that he was being discriminated against because of race (or any protected status) and/or harassed on account of perceived sexual orientation." (Def.'s Local Rule 56.1 St. of Undisputed Facts ¶ 47; Pl's Local Rule 56.1 St. ¶ 47; Pl.'s Aff. ¶ 18.) "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998); see 42 U.S.C. § 2000e-3 (a)(prohibiting discrimination based on an individual's opposition to "any practice made an

13

unlawful employment practice by this subchapter"); Foster, 724 F. Supp. 2d at 395 (engaging in a protected activity requires a plaintiff to oppose statutorily prohibited discrimination, not simply complain about unrelated work problems). Thus, Plaintiff's assertion that "whether a union grievance specifies a Title VII type claim is not relevant" is patently belied by both the relevant case law and the statutory language of Title VII itself. (Pl.'s Mem. of Law in Opp'n at 10.) Plaintiff has therefore failed to establish a *prima facie* case of retaliation based on his assertion that a drug test was conducted in a manner designed to "humiliate and degrade him" in retaliation for a prior filed grievance. (Pl.'s Mem. of Law in Opp'n at 20.)

## IV.  CONCLUSION

For the reasons discussed above, Defendant has established its entitlement to summary judgment, and Plaintiff's complaint is dismissed in its entirety.

## V.  ORDERS

IT HEREBY IS ORDERED that Defendant's motion for summary judgment dismissing the complaint (Docket No. 15) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: August 23, 2012
      Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                                    Chief Judge